Good morning. My name is Heather Gallagher. I represent the Commonwealth Appellant in this case. I'll reserve three minutes, please. Thank you. This case, as most of the honors know well, has a rather tortured procedural history, a rather lengthy procedural history in this case. Did the state court misapply Pennsylvania law by saying the petition was unfinished? No, Your Honor, the court did not. The PCIA petition was absolutely untimely. Now, the matcha court... There was a perception, though. I mean, I assume he found out about it from very recently. I mean, he did set forth those facts, didn't he? I would disagree that he only found out about it recently. As early as when he pled guilty in the sentence, he noted to the court that there was a time credit issue. Now, as long as it was in his favor, he was happy to sit silently by. Well, isn't it the case that nobody said, hey, your release date is changing until 11 years later? Yes, Your Honor. Okay, so how could he possibly, how could any human being, surely living in a time machine, have said, have made the claim you're saying he should have made within a year of his being sentenced? Well, Your Honor, I would suggest that he, number one, knew that there was a time credit issue. The case law is very, very clear that you're not supposed to double credit for the time that you have served. It was his job to say to the state, I think you're wrong. I should serve longer. That's your position? No, Your Honor, my position is that his sentence today is the same sentence that was imposed in 1994. Take that as a given, Ms. Gallagher, and answer the question that I'm attempting to put to you perhaps inartfully. How could he have said to the state, you've calculated, you have wrongly extended my time here when you've told me all along I was getting out on date X and now you're saying date Y. How could he have made that claim before the state in fact said, oh, you're getting out on date Y? If you need, I understand what you're saying, and until he was notified, oh, we recalculated, or I should say we corrected the calculation of your max date, and it is this as opposed to what we were previously telling you, I understand you're saying he couldn't have then filed his petition. The problem, of course, is what he initially did, not the PCI petition or the request to withdraw his plea, but when he sent the letter to the sentencing judge and said, hey, I'm not getting the proper time credit, the judge said, looked at that letter and denied him time credit. It was only after that that he filed the PCI petition requesting to withdraw his plea. Now, when he did not do anything after filing that letter and after the judge denied him time credit, he did not appeal. He did nothing. Instead, he very quickly filed a second petition. He filed a second petition to withdraw his plea. Absolutely. And he did that within a 60-day time limit. What he has to do is he has to file the PCI petition within 60 days of when he discovered that the time credit issue had been changed, and he then has to plead and prove that it's a new discovery fact. That's what his prose said. Now, let's have a little slack. Well, I think that he didn't call it by the right name, obviously, but he did file something, and in there, certain facts are set forth from which you can figure out that he just found out about this thing, couldn't you? Absolutely not. I will happily concede that he should have gotten a review on this issue in the state court, but I would say that he got a review on this issue before he filed the PCI petition, when he filed his motion for time credit and the letter to the sentencing judge. So, let me tell you, this is a duo. He just, instead of taking his direct appeal to the superior court, saying, look, they denied me time credit I was entitled to, he just saw a duo when I filed his motion for time credit to plead. Yes. That's his position. That would be my position. So, you're saying he should have gotten a review on that? Should he have gotten a review on his PCI petition? I would say he should not have. But, nevertheless. What did you just say? You just said we would concede that he should have gotten a review in the state courts on that? I said I'm willing to concede to move on to the next issue, because even if he had gotten a review on the issue, it was a purely state issue and not a human rights issue. I know. We'll come to that. But, I'm interested. There are two cases, Common Law v. Boosley and Common Law v. McGill. Most Supreme Court is familiar with them? Yes, sir. And, they require that a pro se petitioner, one of those is clearly a pro se petitioner, they require that they plead and prove a picker-up time in this exception. Yes. And, are you saying he didn't do that? He did not do that. And, the PCIA is very clear. He practically approved that exception. He didn't. I thought the superior court said he did. Did the superior court say? No. I don't think they agree with the Court of Common Pleas. And, the Court of Common Pleas said he didn't plead. What does it mean in the superior court's opinion when they say the following? This is A-183. In his brief, pro se appellant attempts unsuccessfully to invoke the time bar exceptions. Isn't that the superior court saying, well, he may not succeed at it, but he's raised the time bar exception? No, I think by that saying, he's unsuccessfully pleading and proving, is if you look at the substance of what he's claiming, and you look at the facts in this case, the superior court's over somebody's back. He's saying that he may have, however, agreed with the lower court saying he did not plead and prove. How did he not prove it? In the superior court, whatever he provides on the claim. For that to be an independent and adequate state, perhaps, Common Law v. Peasley and Common Law v. Wood, isn't that a pretty nitpicky thing to push on a pro se petition? No, I don't believe that it is. Why do you need such a harsh rule? I don't believe it is a harsh rule. There needs to be some finality. Why do you need such a rule? Because there needs to be finality in these cases. The defendants have finality. It's fine, but it seems to exalt form over substance in the extreme. If the pro se petitioner states in the petition the facts from which any national jurist would conclude that he's saying, first, I'm late, 11 years is rather late. And secondly, I just learned about this a short while ago. Why the formalism of having the court plead and prove? Why isn't that tantamount to doing so? I'm not sure why the courts have decided to interpret it that way, but the fact remains, in order for there to be some finality, they've set one of these three exceptions over the PCIA. The superior court understood that that's what he was invoking. They said they understood that that's what he was invoking. If they said that he's unsuccessful in invoking any of the exceptions, then he didn't invoke an exception. If they thought that he invoked an exception, the superior court often will go beyond his test and review the merits of those claims, and would have had to on many, many occasions. So to sum it up, you have to say, I am invoking an exception. I mean, why can't they read between the lines that he's invoking an exception? They did read between the lines. They said it, didn't they? That he had unsuccessfully invoked an exception. Unsuccessfully. That means, well, we're not accepting that his argument wins, but we understand what he's saying. Let me ask it this way, Ms. Gallagher. Hold on. Let me just ask it this way. Let's take a step past this. Assume that we understood the superior court to mean, hey, we know he's invoking an exception. We just think he loses, all right? If we understood that to be the case, does that mean that you lose? What's the next step? Absolutely not. Go to the next step. Absolutely. Under state law, they review the merits of his claim, which is essentially him saying, when we boil it down to the basics, he said, I'm not giving credit for Tom Surd. That's what he's always been claiming. However, state law is very clear. You are not entitled to double credit for pre-sentence incarceration, which is what this is. He received credit for the contested time towards his sentence in Northampton County. He is not entitled to that credit. Wouldn't there come some point in time when sentence recalculation would be fundamentally unfair? No. Your Honor, that would be like saying if the court were defending his sentence to a life sentence as well as his sentence to other sentences of 20 to 40 years, say, on other crimes. And those sentences are to be served concurrently. And for whatever reason, the Department of Corrections, in its calculations, only calculates one of those sentences. And sometimes this is the life sentence. The defendant knew what a sentence was when he was sentenced. How about Wolf v. McDonnell? I mean, can't it give rise to a limited interest in new procedural protections? Wolf v. McDonnell, I would argue, and I get it in my brain, is that it is distinguishable. First of all, it is not. He wrote his case. It was a case under 1983. And the difference in that is that the state created good time credit that the defendant was entitled to if he did certain things, that he could not take that away without providing him some sort of due process. In this case, it's very different. In this case, the defendant is not entitled to three cents incarceration double credit. He was never entitled to it. Even when they told him for 11 years, you've got it, for 11 years they tell him what is it. I mean, could the state, assuming that they had discovered this problem the day he was packing his bags to leave, and as he's walking out of the gate and somebody puts their arm on his shoulder and drags him back in and says, sorry, we've made a mistake, you're here for another 10 years, in this case 4 1⁄2 years. Your position is there's no point in time at which it's too late for the state, or actually let him put a pass at it. They'll let him go. He's out of the gate. He's got a job. He's reached out. He's like, can we go back out and get him and say, our bad, you've got to serve another five years. I think that the Commonwealth and the victims in this case and the people in the Commonwealth are entitled, that when a defendant is sentenced, that he serves the sentence that the trial court imposed, and I think that the judge was entitled to have the sentence that he imposed. When you say the sentence he imposed, the sentence that was imposed by its terms was calculated by the executive branch and said to begin on a certain date. Aren't you kind of sliding past it every time you say the sentence imposed? The sentence imposed for 11 years paved his release date, didn't it? No, Your Honor. The sentence that was imposed is the sentence that when he was standing there and he pleaded guilty, I'm sorry, he pleaded no contest. That's the sentence that was imposed, the sentence that the judge imposed on that day, and sentencing the defendant, sentencing his counsel, that's the sentence that was imposed. And that's the sentence that was recorded on that day. Now, Department of Corrections miscalculated that. But the sentence imposed is the sentence from that day. But isn't the Lehigh County order said to run from the next date? And the next date wasn't the four and a half years from, it was the same date as the North Hampton County. The date that was recorded on the sentencing sheet, I believe, was the correct date, and then when it was calculated and sent to DOC, that was what was incorrect. Department of Corrections is who calculates time. That's a Department of Corrections who does that calculation, not the sentencing court. And don't we, shouldn't we be wary enough of allowing the Department of Corrections the latitude to just be changing these things? One of the jobs of the Department of Corrections, and there's always been this way, is they calculate the sentences. And if the defendant files a mandamus action with the Commonwealth Court, or files a motion as this defendant did with the sentence, and just saying, look, they're miscalculating my sentence, that can be reviewed and what can be said if something's incorrect. However, the Department of Corrections calculates those sentences and determines a minimum lasting date. Right, but certainly it has to be that way. Doesn't the individual have certain rights to be heard? The Department of Corrections is just changing them? If this court were to find that there's a right to be heard, then the remedy is to let him be heard, not to release him from prison. The remedy would then be to bring him back, let him be heard on the issue, not to order his release. Okay, thanks very much, Ms. Geller. Mr. Kelly. Good morning, guys. Michael J. Kelly, representing Portland. If I may begin on the issue of the Commonwealth that I've been referring to, the arrest on tolerance of the PCRA. Yeah, can you tell me how you complied with Commonwealth v. Beasley and Commonwealth v. Warren? If I may, the defendant complied with that in the sense that he didn't file a motion that controlled the PCRA. I realize that. They recharacterized it. They recharacterized it. They said he was self-defeating. However, somehow I noticed that the PCRA requirements weren't. That was something that was imposed on him as a... But they were giving him a gift by characterizing it as a PCRA. Oh, you don't know what to say. The motion of the trial gave it to me. Well, I know, but then he's a person. Well, as a person, I know. I mean, this is being confusing again. But let me undercut it, if I may. The government is quite open with regard to untimeliness and exhaustion and procedure of the fall, which is a non-objective to the report and recommendation by the magistrate. Why would they? They quarelled. What case law says that they need to object to an R&R in which they quarelled? It seems rather counterintuitive. I think I have to. I don't know of any cases which specifically say they have to. Was that case in your brief? Yes, Your Honor. Exactly. Their claim was that as defined by the magistrate, that there was no procedure of the fall, that it depended on how exhausted he was, and the issue of timeliness, or untimeliness. There's a whole other law, I assume there's a local rule of code out there that requires objection. Well, it depends on the type of report. I'm trying to think. I think that's in the Federal Rules of Procedure. The rules require an objection. That's my understanding. You've got to go into detail and explain. You're saying, did they object, or they just didn't object to that particular thing? They did not object to those brief findings. But they did file an objection, still. They did file an objection. They did file an objection. We're not on the ultimate issue. On the ultimate issue, the magistrate recommended that the Hager's petition be denied, on the grounds that there was no due process going on. What rule or case says that a prevailing party needs to object to some adverse portion of the magistrate's report and recommendation? I'm not aware of any case, Your Honor. I frankly have some issues with that. Did they have the right? Let's assume for a minute that the rules in case law are such that we would expect a prevailing party, such as the Commonwealth, at that level, to appeal. But once you file your objections, do you say anything about whether they then should have said, well, now that this is going to the next level to the district court, it is incumbent upon the Commonwealth to challenge those adverse portions of the magistrate judge's rule? Your Honor, to be frank, I'm not aware of any rule or case. In fact, as in many cases, where I have dealt with a claim by the government, by the Commonwealth, that I fail to object to report recommendations to specific findings. If there were to be report recommendations, those issues would be considered weighted. Let's assume, let's pass that for the moment. We'll obviously take a closer look at that. Let's come back to my question. In your favor, by characterizing that as a pickler, where does he comply with Beasley and Wharton in that document? He didn't. He's implicit in his notion of guilt. He's implicit because of the facts and so forth? Yes, exactly. All right, but does it require more than that? You have to plead and prove it. Hasn't the court been pretty strict in that Supreme Court of Pennsylvania? Haven't they required that you say, well, I acknowledge that this is untimely, and this is the reason it isn't untimely, and I request that I be granted one of the exceptions. So, haven't they almost always required that? They didn't. Even with pro se petitioners, my students have had this one. However, you know, and you don't really need that, do you? Well, I think it does, Your Honor, because of the fact that he's had from that, which was a motion to withdraw his plea, and the fact that they're doing him a favor by characterizing it as a pickler, is again, on the one hand, he's taking away the evidence. Does the Blackwell case play in here at all? I'm not familiar with that, Your Honor. All right, then I'm sorry, but let me ask you this, a separate question. This was filed, his appeal, which got treated as a second picker petition, was filed more than 60 days after he learned about what was going on? Yes, Your Honor. Okay. Why isn't that all by itself dispositive? Well, I think because that was a normative step on his part. How so? I don't understand. Well, again, look, obviously the motion was to file an appeal, but Tom filed an appeal for a talk. Right, because he had failed to appeal, right? Right. So he hadn't appealed, and then much later, he files this thing, which gives him no place, but which the court, again, generously, when he appeals from the denial of that, calls a second picker petition. But it's still untimely under the 68 rule, right? Yes, it may be untimely, Your Honor, because, of course, I emphasize the importance of realizing the weight. I think it's untimely, and I think the state would have a basis for claiming procedural default. However, even if there is procedural default, this court can find exceptions grounds for excusing the procedural default under the circumstances. And the state didn't invoke the 68 rule. So why would we find a procedural default if the state did? I mean, we defer to what the state does all the time when its actions are adverse to the petitioner. Why would we defer to them when they do him a favor? I don't understand. If you like it, right? It's for them to do, isn't it? We think it's about everything. It's about deference to state criminal convictions and procedures, et cetera, right? Yes, Your Honor. And that's why I say with regard to the non-objecting to the report recommendation findings, that only if you are non-objecting, we should have to look at it under the point of view standard and point of view on the presence of substantial rights. And I'm talking about humus comedy and stuff like that. I assume we got to the merits. Okay. How is there a liberty interest in having the advantage of an illegal sentence? Well, Your Honor, I think we, again, the expectations we have are sensitive to, among other things, but besides punishing somebody, there's a rehabilitation aspect. Respond to Ms. Gallagher's argument, okay? You heard her. You read in her brief how she distinguishes Wolfe. You heard her go through it here in front of us. Why is she wrong? Why is she wrong when she says Wolfe involved something the state actually did? This is a case where the state didn't do something, and he's not entitled to take advantage of something that the state never granted him. Because, Your Honor, fundamentally, we're looking at the basic facts of the case. When the original sentence was imposed, the court granted time credit. And then within a week or so, the D.C. Commitment Order was issued by the clerk of court, and that showed time credit from the date in 1986. When the court approaches, or the court approaches, Is she factually wrong? Because I heard her say a minute ago that the sentence from the court was never incorrect. It was made incorrect, in a sense, by the Department of Corrections notations on that form, D.C., whatever it is. Anyway, is she? And now I've heard you say something factually different, that the court sentence was wrong to start with. Was the sentence pronounced by the court accurate, or was it inaccurate? It was accurate, Your Honor, because the name of the case was time credit as required by law. They didn't have to follow the steps. Now, what were they required? In the opening case, cited in my brief, the court makes a concession, made sensible by the court, the district court. In the opening case, the Department of Corrections said, In the opening, the Supreme Court said, The Supreme Court said, The court's decided what time credit is. Regardless of what the statutes are, the court's decided what time credit is. And when a trial court has issued a time credit order, it's incumbent on the Commonwealth to do that, and only a higher court can change that. It's simply not for the court of corrections to make that decision. What happened here is noteworthy. It's the fact that after the commitment order, the judge passed the sentence. The commitment order issued a time credit order in 1986. Six months later, the Department of Corrections granted that by a manager to the judge. The judge did not directly reply. However, six weeks later, the court, under the judge, issued a certified commitment order, still giving the same time credit. And so, Judge, there's another area that adheres to your client, right? I thought that ten years later, when the lengthier explication was issued, there were two changes. One change was in favor of your client. Modestly, we had a change that was significantly in favor of your client. Is that what happened? I'm not sure about the moderate favor. Well, they said they didn't give you credit properly for time served. Isn't that what happened? The result is a slight issue of a reasonable amount of time. In the corrections department's calculation, I think that the main issue was four and a half years. Right. It was a minor correction. They gave you benefit that was minor and made another change that was major adverse. One more judge's choice question. I'm not sure I have an answer to it. I'm struggling with it. Why is there a legal interest in serving an illegally short sentence? It's an illegally short sentence. Well, I'm saying it's more illegally because the sentence was contrary to Pennsylvania law. I didn't see that. What do we call it, a sentence or a de-assignmentation or whatever? Where is the legal interest in serving an illegally short sentence? Assuming it was an illegally sentence, which I don't concede, but assuming that, the legal issue, again, is a basic due process principle that after a long period of time goes by, a person is affected by court orders, however, likely not a court order. So if your client had been solitary and was unaware of any of this going on, but we knew on his behalf he was his lawyer, we're sending missives back and forth, and he was unaware of any of this, he has no legal interest. He does have a legal interest. You just said the person's affected by it because they're thinking about it and they're relying on it. I presume you'd say they're relying on it. But I'm hypothetical. There's no reliance interest. There's no knowledge. He's blissfully ignorant of the missteps of the Department of Corrections. Even the judge is having a bad day. They put 60 months down instead of 600 months. After that whole issue, he's entitled to do 60 months. I don't think so, no. He has an expectation. He went to jail knowing that he's only doing 60 months. He left it all the way to jail. You're saying he's entitled to a hearing even for the most minor correction, the most minor clerical error? I don't think so, no. Where are we drawing the line? Well, we're talking about due process. I realize it's so accessible. But underlying, including in due process, are principles from other areas of law. Reactions, for example, whereby you don't get to due process until you have a property, a right for a liberty interest. So I'm asking you to get to the threshold point. What is the liberty interest defining? What are its contours? What are its limits? The liberty interest is to not have to serve a day more than the state has indicated you have to serve. In my hypothetical, I just told you that the state said, let's make it worse, that the state said you are going to do six months. And that was a mistake. He was supposed to do 600 months. You just told me that when he's told he's doing six months, he has a liberty interest. Yeah, nobody even knows. The liberty interest doesn't develop to make a long period of time. A long period of time? Yeah, a substantial period of time. A substantial period of time. How long is that? Well, it's not simple to make a mathematical calculation. I think that's what the case law, to make and release and talk about. And the fact of the matter, should we allow district judges in the third circuit to bring to bear their individual motions a substantial period of time in determining whether that is sufficient to trigger a liberty interest? My time is up. Please do. Certainly, the district court should be encouraged to recognize a possible due process violation for a case such as this where there has been a reliance on a sentence being correct in terms of that. Well, forget all the lines from that. I'm asking, if we were to issue a presidential opinion that says a liberty interest exists, that a prisoner is serving what, in retrospect, is an erroneously short sentence under state law, but that prisoner has a liberty interest once he has served a substantial period of time. Yes, I think that's true. You think it would be appropriate for many able district judges in this circuit to render their own motions of what a substantial period of time, such that a judge in one place might say that 10 years is not substantial, and another judge somewhere might say, you know what, 30 days is substantial enough in my mind, because that's a psychological torture on someone to be sitting there in jail for 30 days thinking they're getting out on extate and then being told later that it's actually four and a half years more. I think in this area of due process, there is a common law, a development of a law, which has to be taken. And the Court of Written should make a judgment as to this simply exceeds the temporal limits, as some of the cases I've talked about, of what's acceptable as a possible due process violation. I'm sorry, go ahead. This kind of scenario is going to be a problem. I don't think it's really a limit, it's more of a, is reliance necessary? I think that's actually best and important. So the prisoner who is blissfully ignorant of all of these mistakes has no legal interest, because by definition, his blissful ignorance has caused him to not rely on the fact that somebody who is paying careful attention and is vigilant, he has a legal interest. But by definition, the person who is being released in this case, and in such a case, does not include lack of knowledge as to when he's supposed to get out, which seems to be the original allegedly erroneous sentence. Even if he's been away, I'm saying he's blissfully ignorant about the erroneous sentence. He's told that he's fine, he's getting out of jail on such-and-such day. That's why he can't do away with his mistakes, by way of that fact. I sincerely say you can never not have reliance because you're always going to rely upon the date Why would you release him instead of just giving him a hearing? If he were to have a hearing, then of course it could have been from the hearing, of course. At the very least, I think Mr. Evans would be entitled to that. However, it's very important to understand in this case, we have to say that the fact that Pennsylvania law, the district court cites a case law, which is that the district court, the higher courts, gave respect to commitment rules issued by a clerk of court, as long as it's certified and so forth. It doesn't have to be issued by a judge. In this case, the Department of Corrections saw a change in the time credit. Six months later, or several weeks after they saw that, the district court reaffirmed the time credit. We're over time here, and we'll give another couple minutes on rebuttal if we need to. But I need to pursue what you had said earlier. I think you're getting into it again now. You have said the sentence wasn't erroneously short. If I understood you right, that the court had the power to begin with, to do what it did, and that the Department of Corrections had no authority to be doing what it did. Did I understand you correctly? Yes. They don't make the final determination about time credit. And you cited a case that you said says, hey, we've got the responsibility and the Department of Corrections people don't mess with us, in effect. Yes, openly, Your Honor. It's cited in the district court's opinion. And openly, this is very important. In the case of the Department of Corrections, the 2006 Commonwealth of Pennsylvania Commonwealth Court decision, the Department of Corrections, you know how it may be calculated for inmates' time credit, nine years after sentence was imposed. And this was not an authorization by the court. The district court, the director of justification, decided that the second judge incorrectly gave the inmate credit for time served. The director of determination at the Department of Corrections, through calculation, had the same force of effect as if it came from a judge. That's part of the facts that the inmate being acquitted. The inmate court, as the President of the District Court will later say, would beg to differ. Contrary to the Department's misguided belief, judges can't change the order. And the way the bar courts, the non-administrative officials, will reverse the order of the trial court. And there's no need to say that the Department is claiming that there's a lot of difficulty. As we've read about it in the district courts, that doesn't matter. So your position is that once the Lehigh County Court judge certified the order, or his office certified the clerk, by your discussion, under his direction, certified the order saying that the state was to have the calculation of the sentence begin on the 86th day, that that was the decision and the sentence of the court. And so that is not something which the Department of Corrections was free to say, you're wrong, do it differently. That's your position, right? Okay, I got you. Yes. Okay, all right. How much of that four-and-a-half-year extra period we're talking about, how do you state he served some of that? He served a good bit of that. Three years of it or something? I think he was released about, say, four-and-a-half years short of having served the full term. So he's looking at about a year and a half. Unless he got credit for the time he's been out under probationary supervision, right? I think it's more than he has now. It tells me it's 22 months, too, but I'm sorry. Okay. All right, thanks very much, Mr. Kelly. Ms. Gallagher, why don't we, I think you're reserved three. We'll give you five if you need it, or do you think you're going to need it? That would be correct, Your Honor, because we were successful ultimately on the issue. And I would just refer you, Your Honor, to the rest of the court, to Meishner v. Beard, which is a Third Circuit case. And that is 173, fellow, I believe it's Appendix 149. I understand why you didn't appeal initially. 173, what was it? I think it's 149. 149.  It's on some other court case. I'm sorry. I'm sorry. I mean, this is something that is quite common in appeals, from trial courts to courts such as ours. I mean, the way the rules are typically structured, and I think it makes a lot of sense, is that if you're somewhat satisfied with the result but not entirely satisfied, you don't have to rush to court and say, we take an appeal because there were a few things said here that we don't like. But certainly after the other side joins the issue and takes the appeal, typically the prevailing party that had some negative things said, they have to join the issues that you took issue with. Why shouldn't we hold your feet to the fire on that? After they appealed, filed their objections, why wasn't it incumbent upon the Commonwealth to file objections to the parts that you didn't like? I think that once it was appealed, our intention obviously was to respond once it was before the district court and not have them file those objections. I would suggest that based on initial versus mere, that even though we did not file the objections at that time, it does not preclude us from arming procedural default. And you didn't argue that to Judge Shapiro? I believe so. Surely then you're not going to be arguing it, because forget the fact you didn't file objections. If you didn't argue it to him, it certainly was waived, wasn't it? If it wasn't argued to Judge Shapiro, absolutely, it would be waived. Having said that, once again, I believe that our position, if you find that the petitioner, Mr. Evans, is not procedurally defaulted on the case, I understand that, Your Honor. That's why I'm asking you with this. We're very interested in all the issues in this case. If you want to throw in the towel, that's fine. That's one less thing we have to think about. I'm not willing to concede that. Please show us where in the record the issue was waived. Now, I'm keen on it. Let's make sure we're accurate here. I thought earlier you said, I will happily concede the point. Can I suggest something that's not a good thing to say? Let me ask you this. If you can find it now, that's great. I'll have you submit, and I don't think this is too short a time to ask for, within a week, give us your record size to show you you've preserved this, if you've preserved it. I'll give you, Mr. Kelly, three days to respond. If you've got something that says, hey, it didn't, then you let us know. That way, within about 10 seconds, we'll have time for you, Mr. Kelly. Yes, Your Honor. I think, if I may, that approach, Your Honor, there's a factual correction. I think I may inadvertently have misled the court in the answer to the detriment of the Commonwealth. That's why I wanted to know. All right. Ms. Gallo, why don't you receive the microphone? I have to have the mic so that we have a record. Sure. I think I was asked about the waives issue. I raised it in my brief. It's page 26 of the brief. I said that the district court confidently rejected the balance of non-exhaustion, the precision deferred argument, only because I was wavered by your objections to the magistrate's report. However, I do not recall making that issue, making that argument in the district court before Judge Shapiro. I just don't, I don't have my district court record for that. So you may not have raised it. Yes. In other words, the way it came up was Judge Shapiro said, okay, it adopted the magistrate's report on those issues, in particular, the farm issues and so forth, but rejected the findings about the non-exhaustion issue. And that is from memory and argument and so forth. And I don't recall that ever being discussed again. Okay. But let me make sure I get this right. So what you're saying is, and then Ms. Kelly will help you out here, and we are going to have this exchange of letters afterwards to get this straightened out, because this is a highly significant point. Okay. What I think I understand you saying, Mr. Kelly, is the magistrate judge said what he said about the procedural default, that that was not objected to by the Commonwealth, and that nobody discussed it after that point with the district court. Okay. It only became a point of contention again before us. Is that it? Yes. The Commonwealth, in their briefing, said that, again, the argument said it made before the magistrate judge. So what you're saying is you filed your objections to the magistrate's report recommendation, which obviously did not include objecting to the finding as procedural default, and that the Commonwealth didn't at that point make any issue about what the magistrate judge said about procedural default. And then, if I got you right, okay. Now, Ms. Gallagher, do you have something to rebut that? Thank you, Mr. Kelly. Thank you. Do I have something to rebut that? The assertion that you didn't file any objection, nor was the issue about the procedural default discussed again. At that point, I don't believe it was, because the issue was whether or not there was a due process or a full liberty interest. I believe the focus remained there. That would make a significant waiver point, wouldn't it? It would, Your Honor. And, again, I'm still psyched to make sure there's a fear for the proposition that that doesn't mean that you can't get to the issue if you find it to be significant enough. But, again, assuming I'm relentless and we get to the merits. Do you think you still win because there's no liberty interest? Yes. Got you. Thanks. That's under 28 United States Code, Section 636B, Subsection C. Now, this has to do more with recommendations. Okay. I do ask the parties if they want to take it on a little more. Do you have anything you want to submit further? Your Honor, I would like to go back and review and have an opportunity to respond. Good. That's, I think, wise. Well, you know, we're right on the edge of the holiday here. So instead of having you come up with that in the next week, as I was indicating, why don't we just ask you to do that? What's the first couple business days after the New Year? I believe it's December, Your Honor. Okay. Why don't we look for something from you then by the 5th? That gives you plenty of time. And then if by the following Monday, Mr. Kelly, you would submit something, that would be a help to us. Okay? Absolutely. You too. Good. Arlene, thank you. Appreciate your assistance in the argument of this case. And we'll call the next case.